**SLIP OP. 07-56**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

MILLENIUM LUMBER DISTRIBUTION LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant.

Before: Jane A. Restani, Chief Judge

Court No. 02-00595

OPINION

[Plaintiff's motion for summary judgment denied. Defendant's cross-motion for summary judgment granted.]

Dated: April 16, 2007

Joel R. Junker & Associates (Joel R. Junker) for the plaintiff.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Jack S. Rockafellow and Aimee Lee), Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, Of Counsel, for the defendant.

Restani, Chief Judge: This matter is before the court on cross-motions for summary judgment by plaintiff Millenium Lumber Distribution, Ltd. ("Millenium"), and defendant United States ("Government") pursuant to USCIT R. 56. Millenium challenges the classification for tariff purposes of its imported merchandise. The United States Bureau of Customs and Border Protection ("Customs"), formerly the United States Customs Service, classified the merchandise as standard lumber under Harmonized Tariff Schedule of the United

States (2000) ("HTSUS") subheading 4407.10.00.[1] Millenium asserts that the proper classification is under subheading 4418.90.40,[2] i.e., roof trusses, or alternatively under 4421.90,[3] i.e., other articles of wood.

---

[1]The relevant portion of the HTSUS Chapter 44 reads as follows:

4407 Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 mm;
4407.10.00 Coniferous
. . .
Other:
. . .
[4407.10.00]15 Not treated:
Mixtures of spruce, pine, and fir ("S-P-F").

It should be noted that the numbering of relevant subheadings varies in subsequent versions of the HTSUS, but will be cited here as used by the parties, and as listed when this dispute arose.

[2]The relevant portion of the HTSUS Chapter 44 reads as follows:

4418 Builders' joinery and carpentry of wood, including cellular wood panels and assembled parquet panels; shingles and shakes:
. . .
4418.90 Other:
. . .
4418.90.40 Other
. . .
[4418.90.40]20 Roof trusses.
. . .
[4418.90.40]90 Other.

[3]The relevant portion of the HTSUS Chapter 44 reads as follows:

4421 Other articles of wood:
. . .
4421.90 Other.

**BACKGROUND**

Millenium is an importer of wood products from Canada, including the subject merchandise, which it identifies as cut lumber or "truss components" intended for use in completed wood trusses. (Compl. ¶¶ 11–14; Pl.'s Mot. for Summ. J., Attach. 1, Ex. C.) The parties agree that the subject merchandise is comprised of 2 x 3, 2 x 4, and 2 x 6 spruce/pine/fir (S-P-F) lumber, of various grades, cut to lengths of 5', 6', 7', 8', 10', 12', 14', 16', 18', and 20'. (Compl. ¶¶ 11–14; Answer ¶ 11.) One end of each piece of lumber is "square cut," at 90 degrees, and the other end is "angle cut," at angles between 67.4 degrees and 80.5 degrees. (Compl. ¶¶ 10, 12; Answer ¶¶ 10, 12.)

According to Millenium, this lumber was intended for use in wood trusses manufactured in the United States, (Compl. ¶ 11), which are installed to form a triangular framework used in the support of rooftops and floors. See Webster's Third New International Dictionary 2456 (1981). The parties agree that completed wood trusses, either assembled or unassembled, would be classified under HTSUS subheading 4418.90.40. The parties disagree, however, as to whether the subject merchandise constitutes complete and/or unassembled wood trusses classifiable under subheading 4418.90.40, or lumber, which requires further processing to be suitable for assembly into a truss and is therefore properly classified under subheading 4407.10.00. (Compl. ¶¶ 18–22; Answer ¶¶ 18–22.)

Between October 1999 and January 2001, Millenium imported approximately 215 entries of the subject merchandise under HTSUS subheading 4418.90.40 through the port of entry in Blaine, Washington. (See Summons.) On December 28, 2000, Millenium received from

Customs a Notice of Action stating that "[t]he subject angle-cut lumber in condition as imported is not a truss component ready to be assembled into a specific truss," and was therefore classifiable under HTSUS subheading 4407.10.00. (Compl. ¶ 15.) Customs subsequently liquidated the various entries under subheading 4407.10.00 on April 20, 2001, May 4, 2001, May 11, 2001, and August 17, 2001. (See Summons.)

Millenium timely filed protest numbers 3004-01-100052 on July 18, 2001, and 3004-01-100070 on August 29, 2001.[4] (Id. at 1.) Millenium's protests sought review of Customs' classification, arguing that the merchandise should be properly classified as roof trusses under subheading 4418.90.40, or alternatively under subheading 4421.90, as other articles of wood. (Id. at 2.) The protests were deemed denied on April 8, 2002, and Millenium timely commenced the present action. (Id.) Both parties then moved for summary judgment pursuant to USCIT R. 56.[5]

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2000) (protest denial

---

[4]The Government disputes the court's jurisdiction over Entry No. 144-7025313-0, because the entry was liquidated under subheading 4418.90.40. See Entry Summ. No. 144-7025313-0. Because this single entry was liquidated under the subheading requested by Millenium, no relief can be granted as to the entry. The current dispute as to Entry No. 144-7025313-0 is therefore moot.

[5]Following submission of the briefs on the parties' Motion and Cross-Motion for Summary Judgment, Millenium moved to strike evidence submitted in support of the Government's position, including that found in various websites cited in the Government's brief, on the grounds that these materials constituted unauthenticated hearsay. Because the court was not required to and did not consider any of the challenged materials in determining the proper classification of the subject merchandise, the court need not resolve the issues raised in Millenium's Motion to Strike. The motion therefore will be denied as moot.

jurisdiction). The proper construction of a tariff provision is an issue of law. Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 (Fed. Cir. 1999). Determination of the nature of a good in order to place it in the proper tariff category is an issue of fact. Id. Both determinations are made de novo. Metchem, Inc. v. United States, 441 F. Supp. 2d 1269, 1271 (CIT 2006).

## DISCUSSION

The issue before the court is the correct tariff classification of angle-cut lumber that, as imported, does not constitute assembled or fabricated articles and that is unidentifiable as pieces of any particular wood truss or trusses. Customs refused to classify the subject merchandise as builders' joinery or carpentry of wood under HTSUS heading 4418, treating it as general sawn lumber under heading 4407. Millenium challenges the classification on the grounds that the merchandise was specifically cut and intended for use in wood trusses and should therefore be classified under heading 4418.[6] In the alternative, Millenium contends that the angle cut lumber constitutes "wooden parts of the [preceding] articles" classifiable as "other" under heading 4421.

To determine the proper classification of imported goods, the court follows the General Rules of Interpretation ("GRIs") of the HTSUS. Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The GRIs set forth the order in which the elements of classification are considered. Pillowtex Corp. v. United States, 171 F.3d 1370, 1374 (Fed. Cir.

---

[6]Millenium also claimed in its Complaint that Customs' classification and liquidation of the entries under heading 4407 had "the effect of modifying or revoking prior interpretive rulings . . . . [without] the process of publication, opportunity for final comment, and final notice." (Compl. ¶¶ 30–32.) Millenium has abandoned this claim by not developing it for purposes of summary judgment.

1999). Under GRI 1, the court must determine the appropriate classification "according to the terms of the headings and any relative section or chapter notes," and may refer to subsequent GRI provisions only where the headings and notes "do not otherwise require" a particular classification. In so doing, the terms of the HTSUS must be construed "according to their common and commercial meanings." Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003). Therefore, in this case, the court must consider whether the subject merchandise is classifiable under HTSUS heading 4407, 4418, or 4421.[7]

**A. The Subject Merchandise is Classifiable Under Heading 4407**

Heading 4407 covers "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 mm." This heading serves as a general category, which "[w]ith few exceptions . . . covers all wood and timber." World Customs Organization, Harmonized Commodity Description & Coding System Explanatory Notes, Explanatory Note 44.07, 676 (2d ed. 1996) ("Explanatory Note(s)").[8] The heading includes products such as "sawn beams, planks, flitches, boards, laths, etc.," and the

---

[7]It is clear that the headings at issue in this case are mutually exclusive. Items classifiable as builders' carpentry or joinery under heading 4418 are excluded from classification as general sawn lumber under heading 4407. Explanatory Note 44.07 ("The heading also excludes . . . [b]uilders' joinery and carpentry (heading 44.18)."). Similarly, heading 44.21 covers items "other than those specified or included in the preceding headings and other than articles of a kind classified elsewhere." Id. at 44.21. Therefore, the decision here must be made under GRI 1. If viewed as a GRI 3 specificity inquiry, here the result would be the same. Contrast BASF Corp. v. United States, ___ F.3d ___, 2007 WL 949717 (Fed. Cir. Mar. 29, 2007) (majority analysis under GRI 3 reached differing outcome from dissent in part under GRI 1).

[8]"Although the Explanatory Notes are not legally binding or dispositive, they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." N. Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001).

wood "need not necessarily be of rectangular (including square) section nor of uniform section along the length." Id. Here, the parties agree that the subject merchandise was comprised of cut lumber, of various lengths and grades. (Compl. ¶ 11; Answer ¶ 11.) The parties also do not dispute that the merchandise was unassembled upon entry, and that each board was of the appropriate thickness for classification under 4407, exceeding 6 mm. For these reasons, the imported merchandise at issue is described by the terms of heading 4407. Therefore, the court next considers whether the merchandise is also described by the terms of heading 4418 and therefore is excluded from 4407, and finally, whether it is described by the terms of heading 4421.

**B. The Subject Merchandise is Not Classifiable Under Heading 4418**

Millenium argues that 4407 was incorrectly applied because the merchandise must be classified under heading 4418, and is therefore not within 4407. Heading 4418 covers "[b]uilders' joinery and carpentry of wood." Explanatory Note 44.18 states that "[heading 4418] applies to woodwork, including that of wood marquetry or inlaid wood, used in the construction of any kind of building, etc., in the form of assembled goods or as recognisable unassembled pieces." "Carpentry" of wood is defined as "woodwork (such as beams, rafters and roof struts) used for structural purposes or in scaffoldings, arch supports, etc." Id.

Millenium asserts that the imported boards constitute wood trusses or unassembled pieces of wood trusses based on the fact that each board contained an angle cut at one end, and on its claim that the merchandise was specifically cut and intended for use in trusses. (See Compl. ¶ 11.) This is not enough to satisfy the requirements for classification

under heading 4418. Although 4418 is not limited to assembled goods and includes relatively advanced recognizable unassembled pieces, they must be carpentry, or joinery, i.e., "prepared with tenons, mortises, dovetails or other similar joints for assembly."[9] Explanatory Note 44.18. This heading does not include a subheading for basic or relatively unprocessed parts. In order to be classifiable under heading 4418, therefore, the merchandise as imported must constitute either identifiable truss pieces ready for assembly, in other words, "carpentry of wood" according to the terms of 4418.

The parties have not focused on definitions of carpentry but have relied on the law regarding parts of products, here, of wood roof trusses. As indicated, 4418 does not cover parts per se. But if Millenium cannot satisfy the tests for classification as parts, in view of the type of product at issue here, it will not be able to demonstrate that this product is carpentry. The product is either so unidentifiable as something other than lumber that it must be classified as lumber, or it is something more, i.e. carpentry. If it is recognizable as a component of a truss, it will have passed an important step for classification under 4418. If it cannot reach that hurdle, there is no reason to further explore any potential additional requirements of 4418. Accordingly, the court turns to the body of law addressed by the parties.

"It is well settled law that merchandise is classified according to its condition when imported." Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994). To determine whether imported merchandise is sufficiently advanced and recognizable at the time of importation, the court must consider whether the merchandise is: 1) identifiable and "fix[ed] with

---

[9] It is clear that the merchandise at issue is not joinery.

certainty" as part of the final product at the time of importation, Baxter Healthcare Corp. of P.R. v. United States, 182 F.3d 1333, 1339 (Fed. Cir. 1999); 2) so far advanced as to be "dedicated solely or principally for use" in the final product, id. at 1338; see also Heraeus-Amersil, Inc. v. United States, 10 CIT 258, 261, 640 F. Supp. 1331, 1333 (1986); and 3) discernable as pieces of specific product structures, not just "the making of [the products] in the abstract," Bendix Mouldings, Inc. v. United States, 73 Cust. Ct. 204, 206, 388 F. Supp. 1193, 1194 (1974). These may simply be different ways of saying the same thing, but the court will address each. "[P]roof of use is not sufficient" to overcome these requirements. Benteler Indus., Inc. v. United States, 17 CIT 1349, 1355, 840 F. Supp. 912, 917 (1993).

**1. The Subject Merchandise Was Not Identifiable or Fixed With Certainty at the Time of Importation**

In the instant case, the merchandise as imported was not identifiable or fixed with certainty as unassembled pieces of wood trusses at the time of importation. Although Millenium argues that the existence of the angle cuts and end user statements indicates that the wood was to be used in trusses, Millenium's assertion that the imported merchandise was identifiable with certainty at the time of importation on the basis of these items does not stand.

In order to be considered recognizable unassembled pieces of a final product, the imported items must have reached the point where they are "too developed in form and detail and too close to the final product to be considered mere material." Lee Enter., Inc. v. United States, 84 Cust. Ct. 208, 215, C.D. 4680 (1980). Here, the evidence on the record demonstrates that there is no genuine issue as to the fact that some or all of the imported lumber would require significant additional processing in order to be assembled into completed wood trusses.

Millenium has failed to present plausible evidence that the merchandise as imported could be assembled into one or more completed trusses without additional cuts or recutting. Acme Venetian Blind & Window Shade Corp. v. United States explains that "wood products not processed beyond sawing and planing, etc., do not lose their character as lumber . . . unless they are a new and different article, having a specific name and function." 56 Cust. Ct. 563, 570, C.D. 2704 (1966). Here, the need for additional cuts or recutting renders the subject merchandise unidentifiable as unassembled pieces of trusses under 4418.

The evidence presented by both parties demonstrates that the need for recutting resulted from several factors existing at the time of importation, including standard truss design requirements, unpredictable shrinkage and swelling that commonly occurs during transport, the lengths of the imported boards, and the potential for the merchandise to be efficiently used in truss designs after additional processing.[10] In particular, the square cuts on one end of each board, although potentially useful in occasional square cut overhangs or splicing, (see Woeste Report 7, Pl.'s Mot. for Summ. J., Attach. 5, Tab 1 ("Woeste Report"); see also Garretto Dep. 145:24–146:4, Jan. 27, 2004, Pl.'s Mot. for Summ. J., Attach. 2 ("Garretto Dep.")), would almost certainly require recutting to achieve necessary angles in the top and bottom chords. (Woeste Report 8–9 ("[N]one of the imported lumber would fit into the bottom chord of a US truss

---

[10]Millenium also admits that, due to pricing distortions resulting from the Softwood Lumber Agreement between the United States and Canada, there was a significant possibility that "the purchase of advanced wood products classified under 4418 could be utilized as a cheaper source of fiber [than standard lumber] through re-cutting." (Pl.'s Mot. for Summ. J. 37–38.) Although this does not affect the condition of the merchandise at the time of importation, it also indicates an increased likelihood that the imported lumber would be recut subsequent to importation, for use as truss lumber or otherwise.

without additional cuts." (emphasis omitted)).) Moreover, even if the original cuts produced the required angles for portions of a truss design, a substantial number of the boards would likely require trimming or recutting to account for shrinkage or swelling that results from exposure to heat and/or moisture during transport. (See, e.g., Garretto Dep. 173:10–25, 221:2–18; see also Woeste Report 9; Woeste Dep. 122:13–19, Jan 25, 2005, Pl.'s Mot. for Summ. J., Attach. 5 ("Woeste Dep.") ("If the intent is for them to somehow be installed directly into a truss without additional cuts [given the possibility of shrinkage and swelling], that doesn't make sense.").)

In addition, the length of the boards combined with the square cut ends indicates the need for additional cuts in order to construct a completed truss. Although Millenium claims that the boards were imported at standard lengths ready for assembly, mere assertion of such a conclusion is insufficient to create a genuine issue of fact. Instead, the evidence on the record indicates an overwhelming improbability that an actual truss design would require all component pieces cut to the exact foot, and each piece square cut at one end. (Woeste Report 9 (stating that it is "a near zero [ ] probability that a set of building plans would require roof trusses with a square cut overhang and require top chord members to have an overall length falling on the exact even foot, with no inches or sixteenths.").) Moreover, "[w]hile an exact foot [total] 'truss span' has a reasonable chance of occurrence in US production, it is extremely unlikely for the design to also have a top chord overall length falling on the exact foot." (Id. at 5 (emphasis omitted).) While Millenium has produced a hypothetical design in which exact-footage lengths may occur, (Pl.'s Mot. for Summ. J., Attach. 1, Ex. D (design submitted by Millenium); Woeste Report 1–2, 4, 8 (stating that the design is hypothetical)), it has not presented actual designs representative of

or intended for the construction of the imported merchandise. In addition, Millenium has failed to present any plausible evidence that the materials as imported constituted realistic or ready-to-assemble pieces of any identifiable truss or trusses. Based on a description of the physical characteristics of the merchandise at the time of importation, "at the border, [an expert] would not recognize it as a truss member. . . . [Y]ou would recognize it - - in the context of being used . . . as something that had to be processed." (Woeste Dep. 30:21–31:8.) Upon further processing, however, the imported lumber would be "nearly 100% useful in US truss production by the addition of one or more cuts to each piece." (Woeste Report 9.)

Therefore, the evidence presented regarding the condition of the merchandise at the time of importation, as well as the likelihood of alteration subsequent to importation, demonstrates that no reasonable fact-finder could find that the merchandise as imported was identifiable as unassembled wood truss pieces, or that the materials were fixed with certainty as such pieces at the time of importation.

**2. The Merchandise is Not Sufficiently Advanced as to be Dedicated Solely or Principally for Use in Completed Wood Trusses**

Even if the merchandise were identifiable as intended for use in wood trusses, Millenium has not presented evidence to suggest that the imported merchandise was so far advanced as to be considered "carpentry" under heading 4418, or to be "dedicated solely or principally for use" as pieces of wood trusses at the time of importation. See Baxter, 182 F.3d at 1338. Statements of intended use or even "proof of use" are not sufficient to overcome this requirement. See Benteler, 17 CIT at 1355, 840 F. Supp. at 917.

Millenium argues that the imported boards, cut to an angle other than ninety

degrees at one end, are sufficiently advanced to be considered recognizable truss pieces, or even complete trusses, for the purposes of tariff classification. It is clear, however, that the boards were not sufficiently advanced to be dedicated to the single use of constructing wood trusses. (See Billows Dep. 209:7–210:9, Jan. 28, 2004, Pl.'s Mot. for Summ. J., Attach. 1.) In addition, although it asserts that the merchandise was solely intended for use in wood trusses, Millenium admits that the wood could be used by purchasers as an alternate source of raw lumber through recutting for other purposes subsequent to importation. (Pl.'s Mot. for Summ. J. 38.) Because the merchandise maintained its identity and usefulness as general sawn lumber for potentially numerous purposes, it was not sufficiently advanced at the time of importation to be classified under 4418. The subject merchandise is neither "too developed" nor "too close to the final product" to be considered "mere material" under this portion of the analysis. Lee Enter., Inc., 84 Cust. Ct. at 214.

**3. The Merchandise Was Not Discernable as Parts of Specific Product Structures at the Time of Importation**

Finally, the merchandise must be recognizable as unassembled pieces of specific product structures when imported, and not just "the making of [the products] in the abstract," in order to be classified under the heading for the final product. Bendix, 73 Cust. Ct. at 206, 388 F. Supp. at 1194. Millenium itself acknowledged that the subject merchandise was not identifiable as pieces of any particular truss at the time of importation, stating that each board "may be used either as a stand alone chord or attached to another truss component . . . . Truss manufacturers order and maintain an inventory of available truss components . . . . [and] may not know which specific truss design a truss component will go into." (Pl.'s Mot. for Summ. J. 5.) Millenium

asserts that the merchandise is relatively interchangeable between designs, but also admits that the intended designs did not exist when the merchandise was imported. (See id.) Millenium suggests that individual truss designs would be generated subsequent to importation according to "a variety of truss designs produced by recognized and accepted computer software systems." (Id. at 61.) This is not sufficient to establish the identity of the imported materials as ready-to-use truss components.

In addition, Millenium has not presented evidence that the individual wood pieces were dedicated to use as any particular truss elements. As mentioned previously, many of the boards would have to be further cut in order to serve as either top or bottom chords in a standard truss design. (See Woeste Report 8–9.) In addition, the merchandise as imported was neither bundled as "truss kits" ready for assembly, nor labeled as specific components of completed trusses.[11]

The evidence as presented demonstrates that no reasonable fact-finder could find that the merchandise was imported as recognizable unassembled pieces of specific trusses, or even that the merchandise was designated pieces for specific truss designs that existed at the time of importation. Because the subject merchandise was not identifiable or fixed with certainty as wood trusses or pieces thereof at the time of importation, and was not sufficiently advanced to be dedicated for use in wood trusses, but was instead simply lumber, it is not classifiable as

[11]In contrast, Customs' New York Ruling C89668 allowed for a tariff classification under 4418 where all wood components necessary for each truss were shipped together. The components were "marked consistent with [their] unique configuration to ensure an accurate assembly of the truss. . . . [and] no cutting [was] necessary at the time of assembly." NY C89668 (Aug. 17, 1998).

carpentry of wood under heading 4418.

**C. The Subject Merchandise is Not Classifiable Under Heading 4421**

Heading 4421 covers "[o]ther articles of wood," including relatively advanced wood parts that are not classifiable under previous headings. See Explanatory Note 44.21. The court has established that the subject merchandise is classifiable as general sawn lumber under heading 4407, and is not classifiable as unassembled pieces of builders' carpentry of wood under heading 4418. The merchandise therefore does not fall within the "other" category, and is not classifiable under heading 4421. Accordingly, under GRI 1, the merchandise is classified under heading 4407, as imported.

**CONCLUSION**

For the foregoing reasons, Millenium's Motion for Summary Judgment is denied, and the Government's Cross-Motion for Summary Judgment is granted. Millenium's Motion to Strike Evidence is denied as moot. Millenium's challenge as to Entry No. 144-7025313-0 is dismissed as moot. Customs' classification of the subject merchandise as to all remaining entries under subheading 4407.10.00 is sustained.

/s/ Jane. A. Restani
Jane A. Restani
Chief Judge

Dated: This 16th day of April, 2007.
New York, New York.

UNITED STATES COURT OF INTERNATIONAL TRADE

MILLENIUM LUMBER DISTRIBUTION LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant.

Before: Jane A. Restani, Chief Judge

Court No. 02-00595

**JUDGMENT**

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED that Plaintiff Millenium Lumber Distribution, Ltd.'s Motion for Summary Judgment is denied, and Defendant United States' Cross-Motion for Summary Judgment is granted. Plaintiff's Motion to Strike Evidence is denied as moot. Plaintiff's challenge as to Entry No. 144-7025313-0 is dismissed as moot. Customs' classification of the subject merchandise as to all remaining entries under subheading 4407.10.00 is sustained.

/s/ Jane A. Restani
Jane A. Restani
Chief Judge

Dated: This 16th Day of April, 2007.
New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: April 16, 2007

By: /s/ Geoffrey Goell
Deputy Clerk